IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CRIMINAL NO. 18-193 (GAG) |
| CHRISTIAN J. SIERRA-PEREZ [2] WANDA PEREZ-GARCIA [4] | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

**INTRODUCTION**

On March 21, 2018, defendants Christian J. Sierra-Pérez [2] ("Sierra") and Wanda Pérez-García [4] ("Pérez") were charged, along with two co-defendants[1], in an Indictment with three counts, to wit, possession of firearms in furtherance of a drug trafficking crime (Title 18, United States Code, Section 924(c)(1)(A)); possession with intent to distribute cocaine base (Tile 21, United States Code, Section 841(a)(1)(b)(1)(B)); and possession with intent to distribute cocaine (Tile 21, United States Code, Section 841(a)(1)(b)(1)(B)). (Docket No. 29).

On March 3, 2020, Sierra filed a Motion to Suppress (Docket No. 147) which was opposed by the government for failure to meet the threshold for a Franks[2] hearing, among others. (Docket No. 152).   On the same day, the Court summarily denied without prejudice Sierra's Motion to Suppress indicating the facts aduced by the government's

---

[1] On May 22, 2020, co-defendant José Huertas-Rosario (husband of Pérez) plead guilty before the undersigned to Count Three of the Indictment pursuant to a plea agreement. (Docket No. 162). On August 25, 2020, co-defendant Víctor D. Sierra-Pérez (brother of Sierra and son of Pérez) also plead guilty before the undersigned but to Count Two of the Indictment pursuant to a plea agreement. (Docket No. 186).

[2] Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674 (1978).

affidavit (Docket No. 1-1) were uncontested save for defense counsel's characterization of the same.    (Docket No. 153).

Over a year later, on March 22, 2021, Sierra (in a second attempt) and Pérez filed a Motion to Suppress requesting that all physical evidence and statements be suppressed. Defendants claim that there are issues of fact which require a suppression hearing. A review of the Motion to Suppress shows that it contains in its caption the name of Sierra and the signature of his counsel.   However, the Motion to Suppress has no arguments whatsoever on Sierra's behalf.   All the arguments contained in said motion pertain to Pérez who is the only one who submitted an unsworn statement under penalty of perjury in support of the Motion to Suppress. As such, this Motion to Suppress should be summarily denied as to Sierra.   However, in an abundance of caution and in compliance with the referral, the Motion to Suppress will be addressed herein as to both Defendants. (Docket No. 201).

On May 10, 2021, the government opposed the Motion to Suppress as to the search of the house claiming it is almost identical to the prior Motion to Suppress and should be summarily denied on the same grounds that the first Motion to Suppress was denied because both motions deal with the same set of facts and no new arguments were raised. As to Pérez' request to suppress her pre-arrest and post-arrest statements, the government posits that there is no need for a hearing because there are no material facts in controversy.   Pérez was not in custodial interrogation at the time she made the statements, and therefore officers did not need to give her the Miranda warnings. As to her post-Miranda statements, she made a voluntary and knowing waiver of her rights. As

to the search of her phone, she gave an informed and voluntary written consent.    (Docket No. 210, pp. 1-2).

On August 15, 2021, Sierra (on a third attempt) and Pérez (on a second attempt) filed a Supplemental Motion and Reiterating Motion to Suppress. But for the unsworn statement under penalty of perjury submitted by Sierra, the motion rehashes the previous arguments made by both Defendants.    (Docket No. 220).

On August 31, 2021, the Motion to Suppress and the Supplemental Motion (both motions will be referred to herein as "the Motion to Suppress") were referred to this United States Magistrate Judge for a hearing, if warranted, and for a report and recommendation.    (Docket No. 221).

For the reasons explained herein below, it is recommended that the Motion to Suppress the physical evidence seized prior and after the state issued search warrant, be denied without a hearing because there are no material issues of fact in controversy.[3] First, the physical evidence seized prior to the search warrant should not be suppressed as it falls under several of the exceptions to a search warrant.    Second, Defendants Sierra and Pérez have not made the required preliminary showing and are not entitled to a Franks hearing.    As such, it is recommended that Defendant's Motion to Suppress the physical evidence seized, pursuant to the state-issued search warrant, be denied as well.

---

[3] There is "no presumptive right to an evidentiary hearing on a motion to suppress." United States v. Cintrón, 724 F.3d 32, 36 (1st Cir. 2013) (internal citation omitted). A hearing must be held only under certain circumstances, such as "if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record." Id. (quotation omitted). Most notably, "the defendant must show that there are factual disputes which, if resolved in his favor, would entitle him to the requested relief." Id.

However, as to the statements made by Pérez (Sierra refused to speak to the officers so there are no statements for him to seek their suppression) and the search of her phone, a hearing is deemed necessary. For judicial economy, the hearing should be limited in scope and should be held in abeyance until after this Report and Recommendation is entertained by the presiding District Judge.

## ANALYSIS

### I.  Exceptions to the Warrant Requirement.

Defendants contend in their Motion to Suppress that there was no legal justification to invade their home and much less to search the same; there was no reasonable suspicion of criminal activity to justify the intrusion; the actions of the agents do not fall on any exception to the warrant requirement and were therefore unlawful; there was no arrest warrant pending authorizing the agents to enter the house; and the agents were not in a lawful position to view any apparent illegal evidence inside the home. (Docket No. 220, pp. 4-5).

To the contrary, the government contends that the PRPD officers knocking on the front door did not amount to an illegal search; the illegal items were in plain view; and any exigency was caused by Defendants' own actions when they attempted to flee from the law enforcement agents. (Docket No. 152, pp. 6-7).

A knock-and-talk is an investigative procedure where "officers who have not yet secured a warrant go to investigate a suspected crime and determine whether the suspect will cooperate." United States v. Paneto, 661 F.3d 709, 712 (1st Cir. 2011); United States v. Pérez-Díaz, 848 F.3d 33, 36 (1st Cir. 2017).

Although the curtilage of the home is a protected area, police officers, like ordinary members of the public, are permitted to go to a home and knock to hail occupants. Kentucky v. King, 563 U.S. 452, 469, 131 S.Ct. 1849 (2011).   The Supreme Court has held that a police officer not armed with a warrant may approach a home and knock, precisely because that is "no more than any private citizen might do." Florida v. Jardines, 569 U.S. 1, 8, 133 S.Ct. 1409, 1415 (2013) (quoting King, 563 U.S. at 470, 131 S.Ct. at 1862). "[T]he knocker on the front glass door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers of all kinds." Jardines, 569 U.S. at 8, 133 S.Ct. at 1415. "This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." Id. The police may take advantage of this license to "approach a home and knock" without a warrant. Id. at 1416.

Thus, "[t]he knock and talk rule permits the police to enter onto private land and knock on a citizen's door for legitimate police purposes, such as gathering information in an investigation, without a warrant." United States v. Smith, 919 F.3d 1, 6 n.2 (1st Cir. 2019) (modification and quotation marks omitted) (quoting Young v. Borders, 850 F.3d 1274, 1284 (11th Cir. 2017)). The occupants have no obligation to respond to police who knock, and even if they respond they have no obligation to answer any questions and are free to instruct officers to depart if the officers do not have a warrant. King, 563 U.S. at 469, 131 S.Ct. at 1862.

As to the plain view doctrine, a warrantless seizure is allowed under the plain view exception and is considered lawful if the seizing officer lawfully reached the position from

which he could see the items in plain view, the seizure satisfies the probable cause standard and the officer had lawful right of access to the object itself.   United States v. Allen, 573 F.3d 42 (1st Cir. 2009).   In the plain view context, the seizure satisfies the probable cause standard when the incriminating character of an object is immediately apparent to the police.   United States v. Sánchez, 612 F.3d 1, 5 (1st Cir. 2010).

Generally, "a warrantless entry into a person's dwelling may be permitted if exigent circumstances arise," United States v. Samboy, 433 F.3d 154, 158 (1st Cir. 2005) (internal quotations omitted), and, in order to find exigent circumstances, "the police must reasonably believe that 'there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant,' " Id. (quoting Fletcher v. Town of Clinton, 196 F.3d 41, 49 (1st Cir. 1999)). The First Circuit has explained that "[t]he exigent circumstances doctrine reflects an understanding and appreciation of how events occur in the real world," United States v. Almonte-Báez, 857 F.3d 27, 31 (1st Cir. 2017), observing that "[p]olice officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving," Id. (quoting King, 563 U.S. at 466, 131 S.Ct. at 1849). To that end, the First Circuit has indicated that the "best examples" of exigent circumstances include "hot pursuit of a felon, imminent destruction or removal of evidence, the threatened escape by a suspect, or imminent threat to the life or safety of the public, police officers, or a person in residence." United States v. Rodríguez-Pacheco, 948 F.3d 1, 7 (1st Cir. 2020); Bilida v. McCleod, 211 F.3d 166, 171 (1st Cir. 2000).

Turning to the instant case, the facts as proffered by the government in the affidavit

(Docket No. 1-1) that the PRPD officers were investigating a recent homicide and were conducting surveillance on public streets before observing Sierra's girlfriend are uncontested. Defendants have not rebutted either the events that transpired that led the PRPD officers to enter the house.[4]   The PRPD officers observed her entering a house and then they knocked on the front door to try to locate the suspect for questioning.   Co-defendant José Huertas-Rosario ("Huertas") answered the door, stepped back, raised his hands, and stated he "did not have anything to do with this" leaving the front door to the house completely open. From the front door, the PRPD officer was able to observe the living room and two males (Defendant Sierra and co-defendant Víctor Sierra-Pérez) seated in the living room.   The PRPD officer observed that there was drug paraphernalia between Sierra and co-defendant Víctor Sierra-Pérez.   Upon seeing the officer, Defendant Sierra stood up and left the room running towards the back door of the premises.   Co-defendant Víctor Sierra-Pérez also ran, attempted to flee, and hid in a bedroom.   The PRPD officer entered the house, knocked on the door of the bedroom and Víctor Sierra-Pérez refused to open.   Co-Defendant Huertas then approached the door of the bedroom and called Víctor Sierra-Pérez to come out. Víctor Sierra-Pérez then opened

---

[4] It is uncontested that Defendant Pérez was not at the house when the officers arrived because she was at work.   Thus, she has no personal knowledge of these events and is unable to rebut them.   As to Defendant Sierra, he claims in his unsworn statement under penalty of perjury in support of the Motion to Suppress that the facts contained in the affidavit in support of the complaint in this case "are false and do not reflect the truth of the events that transpired on March 4, 2018 . . ." (Docket No. 220-1).  This conclusory allegation in a self-serving statement is not enough to contradict the detailed account of the facts as contained in the affidavit in support of the complaint. (Docket No. 1-1). While the court is unable to readily resolve disputed issues of fact in the absence of an evidentiary hearing, the unsupported, speculative, self-serving, and conclusory assertions related through Defendant Sierra's unsworn statement are discredited.  *See* United States v. Martínez, 992 F.Supp.2d 322, 326 (S.D.N.Y. 2014) ("[W]hen the allegations contained in ... an affidavit [in support of a motion to suppress] are general and conclusory, an evidentiary hearing is unnecessary." (internal quotation marks and citations omitted)).  *See also,* United States v. Stegemann, 40 F.Supp. 3d 249, 255 (N.D.N.Y. 2014), aff'd in part, 701 F. App'x 35 (2d Cir. 2017).

the door, came out and the PRPD officer observed on top of a dresser various transparent plastic bags with individual purple foil packets of suspected heroin.   (Docket No. 1-1, p. 3).

It is uncontested that the PRPD officers did not knock on the door of the house to arrest a defendant but as part of an investigation. As properly argued by the government, the officers did not need probable cause or reasonable articulable suspicion to approach Defendants' house, and there was no search or seizure to trigger Fourth Amendment protections.    Thus, the PRPD officers in this case did not need a warrant to approach and knock on the front door and were in a lawful vantage point to observe narcotics in plain view after co-defendant José Huertas-Rosario voluntarily opened the door.    The occupants of the house could have ignored the knocking on the door, but Huertas opened the door, raised his hands, and left the door totally open, thus, allowing the law enforcement officer to have a clear view of the inside of the house.   Hence, the PRPD agents were operating within the confines permitted in Jardines, 133 S.Ct. at 1409.   *See also* California v. Ciraolo, 106 S.Ct. 1809, 1812 (1986) (law enforcement officers need not "shield their eyes" when passing by the home on "public thoroughfares").

Upon Sierra's and his brother's attempt to flee from the law enforcement officers and the possibility of destruction or removal of evidence, the officers under the exigent circumstances entered the house and observed in the living room a table containing cocaine and vials with crack cocaine.   (Docket No. 1-1, p. 2).   Thus, this is a case in which the police lawfully approached a suspect's door to perform a "knock and talk" investigation because they lacked probable cause for a warrant, and only thereafter were

confronted by an exigency created by a suspect's own conduct when two of the occupants stood up, ran, and attempted to flee. *See, e.g.,*  United States v. Jones, 239 F.3d 716, 721 (5th Cir. 2001) (entry justified because officers did not create exigent circumstance by initiating "knock and talk" investigation at defendant's door where officer's had no probable cause to obtain a warrant and gun evidence was in plain view to officers standing at the door); United States v. Scroger, 98 F.3d 1256, 1260 (10th Cir. 1997) (search justified because police did not create exigency by knocking on the door of a suspected meth lab where officers believed there was insufficient probable cause to obtain a warrant and defendant greeted officers with a meth hot plate in hand); United States v. Grissett, 925 F.2d 776, 778 (4th Cir. 1991) (search and seizure justified because officers did not create exigency by approaching hotel room and identifying themselves before the smell of marijuana indicated the presence of drugs); *see also* United States v. Halliman, 923 F.2d 873, 878-79 (D.C.Cir. 1991) (entry justified where, after knocking, officer heard a toilet flush, creating reasonable likelihood that drugs were being destroyed).

Consequently, the seizing PRPD officers lawfully reached the position from which they could see the illegal items in plain view and did not need a warrant to approach and knock on the front door. They were in a lawful vantage point to observe narcotics in plain view. It is uncontested that the officers' search at that time was limited in scope to what they observed in plain view after Defendant Sierra and co-defendant Víctor Sierra-Pérez attempted to flee. Defendants Sierra and Pérez do not argue to the contrary in their unsworn statements under penalty of perjury. Moreover, but for conclusory arguments of defense counsel, Defendants Sierra and Pérez have not contested that the drugs and

paraphernalia were in plain view and that Defendant Sierra and his brother attempted to flee, thus creating exigent circumstances for the PRPD officers to enter the residence.

Finally, the seizure of the narcotics and paraphernalia satisfied the probable cause standard as their incriminating nature is apparent, as it was indicative to the PRPD officers that there was a violation to the Puerto Rico Controlled Substances Law.

In sum, the law enforcement officers did not need probable cause or reasonable articulable suspicion to approach Defendants' house, and there was no search or seizure to trigger Fourth Amendment protections. Accordingly, it is recommended that all the physical evidence which was seized in plain view under exigent circumstances pursuant to a "knock and talk" (prior to obtaining the state search warrant for the house) not be suppressed.

## II.  Entitlement to a Franks Hearing.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const. amend. IV, and generally requires law enforcement officers to secure a warrant supported by probable cause prior to effecting a search or seizure, *see* Paneto, 661 F.3d at 713. Probable cause exists when the totality of the circumstances suggests that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Hicks, 575 F.3d 130, 136 (1st Cir. 2009).

A criminal defendant does not have a presumptive right to an evidentiary hearing on a motion to suppress.  United States v. D'Andrea, 648 F.3d 1 (1st Cir. 2011); United States v. Brown, 621 F.3d 48, 57 (1st Cir. 2010) (*citing* United States v. Panitz, 907 F.2d

1267, 1273 (1st Cir. 1990)). A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record. . . . Most importantly, the defendant must show that there are factual disputes which, if resolved in his favor, would entitle him to the requested relief." D'Andrea, 648 F.3d at 1; United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996); United States v. López-Díaz, 872 F.Supp 2d 120, 130 (D.P.R. 2012).

As in this case, information supporting probable cause may be set out in an affidavit submitted with the application for a search warrant. Although "[t]here is ... a presumption of validity with respect to the affidavit supporting the search warrant," that presumption may be refuted during a so-called Franks hearing.[5]   Franks, 438 U.S. at 171, 98 S.Ct. at 2674.

However, to get a Franks hearing, a party must first make two "substantial preliminary showings", to wit: (1) that a false statement or omission in the affidavit was made knowingly and intentionally or with reckless disregard for the truth; and (2) the falsehood or omission was necessary to the finding of probable cause.   See Id. at 155-56, 98 S.Ct. 2674; United States v. Graf, 784 F.3d 1, 3 (1st Cir. 2015); Hicks, 575 F.3d at 138; United States v. Castillo, 287 F.3d 21, 25 (1st Cir. 2002).

As recognized by the First Circuit in Graf, quoting Franks, "the high Court further mandated that to make a substantial preliminary showing, a defendant must make 'allegations of deliberate falsehood or of reckless disregard for the truth ... accompanied

---

[5] It has long been the case that "[a]n affidavit submitted in support of a search warrant application is presumed valid." United States v. Grant, 218 F.3d 72, 77 (1st Cir. 2000).

by an offer of proof.'" <u>Graf</u>, 784 F.3d at 8, <u>Franks</u>, 438 U.S. 171.   Defendant's "'attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.'" <u>Id</u>.   Defendant must "'point out specifically the portion of the warrant affidavit that is claimed to be false' and accompany allegations with a 'statement of supporting reasons. <u>Id</u>.   Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.   <u>Id</u>.'"

Failure to make a showing on either element dooms a party's hearing request. In the event that a hearing is granted and "at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side [or the omitted material included], the affidavit's … content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." <u>Franks</u>, 438 U.S. at 156, 98 S.Ct. 2674.

Against this backdrop, the Court analyzes the suppression request of the illegal physical evidence seized pursuant to the state issued search warrant filed by Defendants Sierra and Pérez.

A review of the Motion to Suppress shows that it conveniently does not contain any reference to the Franks standard in a total disregard of its applicability.   Moreover, it lacks any such allegations of deliberate falsehood or material omissions of reckless disregard for the truth.   The Motion to Suppress is based on speculative conclusory arguments of counsel with no offer of proof or statement of supporting reasons. Even though both Defendants submitted unsworn declarations under penalty of perjury, they

only make an identical blanket assertion that "any statement given by law enforcement officers in support of the Puerto Rico Court issued search warrant obtained for my residence is false." (Docket Nos. 201-1 and 220-1).   These boiler plate statements are not enough.   The absence of an offer of proof or statement of supporting reasons is not satisfactorily explained either.   Moreover, no information was included in the Motion to Suppress as to how this conclusion was reached by Defendants or their counsel.

To this effect, no affidavits or sworn statements of witnesses or an investigator[6] were provided in support of the alleged false statements included in the affidavit in support of the state search warrant which served as the basis for its issuance.   As a matter of fact, Defendants Sierra and Pérez fail to identify which are the alleged false statements and/or which are the portions of the affidavit which contain the alleged false statements. Furthermore, Defendants did not even include as an exhibit the state search warrant at issue and the affidavit in support thereof for the Court's benefit and review.[7]   Thus, Defendants Sierra and Pérez have not complied with making "allegations of deliberate falsehood or of reckless disregard for the truth … accompanied by an offer of proof.'" Graf, 784 F.3d at 8; Franks, 438 U.S. 171.

Finally, and for the sake of the argument, even if Defendants could meet the first

---

[6] Defendants aver in their Supplemental Motion to Suppress that they have conducted "an extensive investigation." (Docket No. 220, p. 1).   However, no evidence about that investigation is submitted by Defendants in support of their request to suppress.
[7] Under Franks, adequate offers of proof include affidavits or sworn or otherwise reliable statements of witnesses. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. However, a Defendant's self-serving statement is not a sufficient offer of proof. United States v. Andújar-Ortiz, 575 F.Supp 2d 373, 377 (D.P.R. 2008); United States v. McDonald, 723 F.2d 1288, 1294 (7th Cir. 1983).

step of the preliminary showing, they have failed to show the second step, to wit, how absent the false information, or including the omitted information, the affidavit contained insufficient evidence to support a finding of probable cause.

Thus, as argued by the government in Docket No. 152 (its response to the original Motion to Suppress which was summarily denied), Defendants have not met their burden of proof, by a preponderance of the evidence, to make a substantial preliminary showing that the affidavit in question omitted material facts knowingly and intentionally, or with reckless disregard for the truth and that the false statements were necessary for the determination of probable cause.   *See* Graf, 784 F.3d at 10.   The preliminary showing for a Franks hearing requires that *both* elements be established.   Defendants Sierra and Pérez have established neither.

In view of the foregoing, it is recommended that Defendants' Motion to Suppress and the request for a Franks hearing be DENIED and the evidence seized pursuant to the state search warrant not be suppressed.

### III.    Defendant Pérez' Statements and the Search of her Phone.

Defendant Pérez has also moved to suppress the pre-arrest and post-arrest statements made by her during the day of her arrest.[8]  Defendant Pérez identified her room pre-arrest and post-arrest stated that she slept on the right side of the bed where 1,000 vials of crack cocaine were found.   She asserts in her unsworn statement that she provided her statements without being advised of her constitutional rights.   (Docket No.

---

[8] Defendant Sierra refused to speak to the agents. Thus, he may not seek suppression of any statements.

201-1).   In addition, defense counsel mentions in the Motion to Suppress, that Defendant Pérez "has an emotional disability, for which she even receives disability support." Furthermore, Defendant Pérez seeks to suppress the evidence seized illegally from her phone.   (Docket No. 201, pp.6-7).

The government contends that there is no need to hold a hearing on the request to suppress Pérez' statements and the evidence seized from the phone because there are no material facts in dispute.   The government proffered Defendant Pérez was properly Mirandized at the scene and she signed a waiver that was not submitted to the Court in the government's response.   (Docket No. 201, pp. 3-6).

The undersigned must hear evidence and access credibility to determine whether, under the totality of the circumstances, Defendant Pérez' statements were given while she was under custody and whether they were made after she voluntary and knowingly waived her rights after being properly advised of her constitutional rights.   The same applies to the search of her phone. Thus, a hearing is deemed necessary but limited in scope to Defendant Pérez' statements and the search of her phone.

Accordingly, it is recommended that the hearing on Defendant Pérez' request to suppress her statements and the evidence seized from her phone be held in abeyance for judicial economy until the presiding District Judge rules on this Report and Recommendation which recommends denial of the Motion to Suppress all the physical evidence as to both Defendants Sierra and Pérez.   If the Report and Recommendation is adopted as to the physical evidence, no evidentiary matters will have to be resolved on the Motion to Suppress physical evidence as to both Defendants.   As such, the suppression

hearing would be limited to Defendant Pérez and to testimony pertaining to the voluntariness and knowingness of the statements she seeks to suppress and the search of her phone.

## CONCLUSION

For the above stated reasons, it is recommended that the Motion to Suppress the physical evidence as to both Defendants Sierra and Pérez be DENIED without a hearing.

Additionally, it is recommended that the hearing on Defendant Pérez' request to suppress her statements and the evidence seized from her phone be held in abeyance until the presiding District Judge rules on this Report and Recommendation at which time the hearing will be promptly scheduled.

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation. *See*, 28 U.S.C. Sec. 636(b)(1); Fed. R. Crim P. 59 (b)(2); Fed .R .Civ. P. 72(b); and Puerto Rico Local Rule 72(d).    Failure to file same within the specified time waives the right to appeal this order. Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988).

In San Juan, Puerto Rico, this 21st day of September of 2021.

s/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE